UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
─────────────────────────────────X

RANDOLPH G. HOWARD, JR.

          Plaintiff,

-against-

VITAL MARKETING GROUP, LLC; MADE MEN ENTERTAINMENT, INC.; VOLUME COMMUNICATIONS, INC.; LEO BURNETT WORLDWIDE, INC.; JOSEPH A. BOUCOS, a.k.a. JOSEPH ANTHONY, KWAD TUFUOH, a.k.a. KWADWO TUFUOH, GARNET MORRIS, and AHMAD ISLAM, individually and in their official capacities,

          Defendants.

─────────────────────────────────X

Case No.: 04 CIV. _____

**VERIFIED COMPLAINT**

**JURY TRIAL DEMANDED**

Randolph G. Howard, Jr., (hereinafter "Plaintiff"), by his attorney Haslyn A. Howard, Esq., alleges:

## JURISDICTION AND VENUE

1. Pursuant to 28 U.S.C.§§ 1331 and 1337(a), this Court has subject-matter jurisdiction over Plaintiff's claims arising under the Federal False Claims Act, 31 U.S.C. §§ 3729, *et seq.* insofar as Plaintiff's claims arise under the Constitution and/or laws of the United States and Plaintiff's other state claims are so closely related that they form the same case and controversy.

2. Venue is proper pursuant to 28 U.S.C. §§ 1391(b) and (c) insofar as: 1) Plaintiff's claims or a substantial part thereof arose in the Southern District of New York; 2) Plaintiff resides within the geographical boundaries of the Southern District of New York; 3) the defendants reside and/or may be found within the geographical boundaries of the Southern

District of New York; and 4) a substantial number of witnesses to the events and facts alleged reside and/or may be found within the geographical boundaries of the Southern District of New York.

## PARTIES

3. At all relevant times herein, Plaintiff was and remains a resident of the State of New York, residing at 557 West 150 Street, New York, County and State of New York.

4. Plaintiff was an employee of the Defendant Vital Marketing Group, LLC, from September 17, 2003 until his illegal discharge on October 10, 2003.

5. Vital Marketing Group, LLC is a limited liability company organized under the laws of the State of Delaware, doing business in the State of New York and having its permanent corporate office at 115 East 23rd Street, 10th Floor, New York, County and State New York and/or 505 Eighth Avenue, 6th Floor, New York, County and State of New York.

6. At all relevant times herein, Vital Marketing Group, LLC was a subsidiary of Volume Communications, Inc.

7. At all relevant times herein, Vital Marketing Group, LLC was a subcontractor for the United States Army providing marketing, advertising and promotional services and products.

8. Volume Communications, Inc. is a corporation organized under the laws of New York doing business in the County and State of New York and having its corporate office at 115 East 23rd Street, 10th Floor, New York, County and State of New York and/or at 45-39 42nd Street, Suite 1C, Sunnyside, Queens County, New York 11104.

9. At all relevant times, Volume Communication, Inc. was the sole and/or majority shareholder of Vital Marketing Group, LLC, with both organizations having common or overlapping ownership and management.

2

10. Made Men Entertainment, Inc. is a corporation organized under the laws of New York doing business in the County of New York and having its corporate offices at 115 East 23rd Street, 10th Floor, New York, County and State of New York and C/O Volume Communications, Inc., 45-39 42nd, Street Suite 1C, Sunnyside, Queens County, New York 11104.

11. At all relevant times herein, Volume Communication, Inc. was the sole and/or majority shareholder of Made Men Entertainment, Inc., with both organizations having common or overlapping ownership and management.

12. At all relevant times herein, Defendant Joseph A. Boucus, a.k.a. Joseph Anthony, was an agent, officer and/or director of Vital Marketing Group, LLC, Made Men Entertainment, Inc. and/or Volume Communications, Inc.

13. At all relevant times herein, Defendant Kwad Tufuoh, a.k.a. Kwadwo Tufuoh, was an agent, officer and/or director of Vital Marketing Group, LLC, Made Men Entertainment, Inc. and/or Volume Communications, Inc.

14. At all relevant times herein, Defendant Garnet Morris was an agent, officer and director of Vital Marketing Group, LLC, Made Men Entertainment, Inc. and/or Volume Communications, Inc.

15. Hereinafter, all of the Defendants identified in paragraph 5 through 14, inclusive, shall be jointly referred to throughout this complaint as "Defendant Employer" unless individual references are necessary.

16. Defendant Leo Burnett Worldwide, Inc. is a foreign corporation, having its corporate office at 35 West Wacker Drive, Chicago, IL, with registered agents for service of process at C/O C T Corporation System, 111 Eighth Avenue, New York, County and State of New York.

17. At all relevant times herein, Defendant Leo Burnett Worldwide, Inc. was a primary contractor to the United States Army providing marketing, promotional and advertising services and products.

18. Defendant Leo Burnett Worldwide, Inc. engaged in a subcontractual relationship with Defendant Employer.

19. Defendant Ahmad Islam is a resident of the State of Illinois. At all relevant times, Defendant Islam was employed by Defendant Leo Burnett Worldwide, Inc. holding the position of Vice President and Director of United States Army Account, and serving as an agent, officer and/or director of Leo Burnett Worldwide, Inc.

## FACTS

20. Plaintiff was hired by Defendant Employer on September 17, 2002, as the Account Director for the United States Army Account.

21. On October 1, 2002, Plaintiff and Defendant Employer entered into a written employment agreement (hereinafter "Agreement") with the employment term running from November 1, 2002 through October 31, 2003, a copy of which is annexed hereto and made part hereof as Exhibit "A".

22. Under the Agreement, Plaintiff continued to serve as Account Director for Defendant Employer's Army Account.

23. Plaintiff's Agreement with Defendant Employer was subject to automatic renewal and was terminable only by thirty days written notice prior to termination date or for good cause, as defined by the Section 5 of the Agreement.

24. During his employment with Defendant Employer, Plaintiff performed his duties and responsibilities competently.

25. Further during his employment with Defendant Employer, Plaintiff received a salary increase and increased responsibilities.

26. In February 2002, when performing a contractually required property inventory, Plaintiff discovered that the Ford F-350 pick-up truck being used by the Defendant Employer to service the United States Army account was purchased by the Defendant Employer rather than leased as required under the United States Army contract.

27. Plaintiff also discovered that Defendant Employer had been and continued to bill the United States Army as if the vehicle was a leased asset rather than a purchased asset. Moreover, Defendant Employer billed the United States Army for the entire purchase price of the vehicle which was above and beyond the lease price.

28. Plaintiff approached Defendant Boucos, shortly thereafter, regarding the discrepancy relating to the F-350 pick-up and the need to record the F-350 pick-up truck on the property inventory list as a purchased asset that should be turned over to the United States Army at the end of the contractual period.

29. Defendant Boucos informed Plaintiff that billing and accounting practices relating to the Army account were not his concern and fell outside of the scope of his job responsibilities and duties.

30. After reporting the discrepancy regarding the F-350 pick-up truck, Defendant Boucos relieved Plaintiff of the responsibility of performing the remainder of the property inventory and/or future inventory reports.

31. Upon information and belief, Defendant Employer and/or Defendants Boucos, Tufuoh, and Morris intended to defraud United States Army by concealing the true status of the F-350 pick-up as purchased asset and subsequently retaining the vehicle after the conclusion of

5

the contractual period in contravention of the governing agreement and/or applicable federal law.

32. On or about April 2003, Plaintiff discovered that the Defendant Employer had been over-billing the United States Army in relation to a series of marketing events and projects for which Plaintiff had been responsible for managing.

33. Moreover, Plaintiff discovered that, over the course of several months, Defendant Employer had been made numerous improper payments to Defendant Islam, Debra Islam, wife of Defendant Islam, and several other persons who shall be referenced as John and Jane Does because their true identities are unknown at this time.

34. Upon information and belief, Defendants Islam, Deborah Islam and John and Jane Does received improper payment from Defendant Employer for their role in aiding the Defendant Employer in illegally obtaining its United States Army subcontract, event sponsorships funded by the United States Army and/or for over-billing for products and services rendered.

35. In furtherance of his responsibilities as Account Director for the United States Army Account, Plaintiff advised Defendants Boucos, Morris, and Tufuoh about the apparent accounting billing and inventory irregularities that he discovered.

36. Defendant Employer, in an attempt to conceal the accounting, billing, and inventory discrepancies and irregularities, instructed Plaintiff to discontinue his investigation into the accounting activities relating to the Army account, admonishing Plaintiff that he was operating outside of the scope of his job description and responsibilities.

37. Additionally, in July 2003, Defendant Employer learned that Plaintiff had discovered that Defendant Islam concealed or overlooked the existence of felony criminal records of Defendants Boucos and Tufuoh which under federal law disqualified Defendants Boucos and

Tufuoh from the acquisition, negotiation, management, administration, or execution federal government contracts or subcontracts. The concealment of said convictions being a proximate cause of the Defendant Employer's acquisition of its subcontractor agreement with the Leo Burnett Worldwide, Inc.

38. In September 2003, after again discovering serious instances of over-billing and accounting regularities, Plaintiff requested that Defendants Boucos, Morris, and Tufuoh review the accounting and billing practices relating to the Army account. Boucos, Morris, and Tufuoh flatly refused Plaintiff's requests and overtly threatened the job security of Plaintiff.

39. Further, Defendant Employer, and/or Defendants Boucos, Morris, Tufuoh and Islam engaged in numerous other fraudulent and/or improper billing and accounting practices which Plaintiff began to question, complain of, and investigate, including kick-back schemes with certain vendors, consultants, and independent contractors hired and/or engaged by Defendant Employer to render services or provided goods required to service the United States Army account.

40. Said kickback scheme involved over-billing the United States Army for goods and services rendered or provided by Defendant Employer, the above-named individual defendants, vendors, consultants, and/or independent contractors.

41. Plaintiff, in furtherance of his duties and responsibilities as account Director for the United States Army Account, continued to report, complain of, and investigate Defendant Employer's illegal conduct.

42. Subsequently, Defendant Employer engaged in a course of intimidation, hostility, and retaliation against Plaintiff because of his continued complaints, reports, and investigation of questionable and often illegal accounting and billing practices.

43. As part of this course of behavior, Defendant Employer willfully and purposefully delayed Plaintiff's performance review as method of exerting control and pressure over the Plaintiff.

44. The willfully and purposefully delay of Plaintiff's performance review was a means of displaying the economic power the Defendant Employer exercised over Plaintiff with regard to Plaintiff's future compensation as well as continued employment.

45. On September 26, 2003, Plaintiff met with Defendant Morris, as Chief Financial Officer, and requested that Defendant Morris speak with Defendants Boucos and Tufuoh in order to facilitate scheduling of the performance review.

46. Shortly after Plaintiff's request, Plaintiff received a phone call from Defendant Boucus, in which said Defendant Boucus instructed Plaintiff to "Suck a dick" in relation to any future performance review.

47. Said statement was heard throughout the corporate office Defendant Employer by several other employees and was intended to intimidate, humiliated Plaintiff investigatory activities into Defendant Employer's illegal conduct.

48. As result of Defendant' Employer's conduct Plaintiff was intimidated, humiliated, ridiculed and otherwise felt pressured to discontinue his activities relating to the accounting, billing and inventory practices of Defendant Employer.

49. At all relevant times herein, Islam was responsible for management and oversight of all aspects of the subcontractual agreement between Leo Burnett Worldwide, Inc. and Defendant Employer, Volume Communications, Inc. and/or Made Men Entertainment, Inc.

50. On or about September 29, 2003, Plaintiff received a telephone call from Defendant Islam in which said defendant attempted to enlist Plaintiff in the ongoing over-billing and

kickback scheme involving the United States Army Account.

51. During said phone conversation, Defendant Islam instructed Plaintiff that his consent, condonation and participation in the illegal accounting, billing and inventory practices of Defendant Employer was essential to his continued employment with Defendant Employer.

52. Defendant Islam informed Plaintiff that his current actions of investigating, questioning, reporting and challenging the billing accounting and inventory practices of Defendant Employer would result in negative employment action or termination.

53. The Defendant Islam intentionally procured the termination of Plaintiff, in an attempt to conceal the illegal activities of himself, Leo Burnett Worldwide, Inc., Defendant Employer and/or other individual and entities involved.

54. On or about October 3, 2003, Defendant Employer informed Plaintiff that it refused to honor the Agreement with Plaintiff.

55. Further on or about October 3, 2003, Defendant Employer offered Plaintiff a new employment agreement, a copy of which is annexed hereto and made part hereof as Exhibit "B".

56. At or about the same time, Defendant Employer informed Plaintiff that his continued employment with Defendant Employer would be conditioned on Plaintiff's acceptance of the position of Account Supervisor for United States Army Account under terms set forth in the new employment agreement.

57. The position of Account Supervisor for United States Army Account, as compared to Plaintiff's then current position of Account Director for United States Army Account, constituted a significant demotion in title, duties and responsibilities as well as prestige.

58. Contemporaneously, Defendant Employer falsely accused Plaintiff of fraudulent conduct allegedly occurring in or about February 2003 relating to the planning of a marketing

9

event for United States Army scheduled to take place in or about January 2004.

59. Defendant Employer's claim of fraudulent activity on the part of Plaintiff was known by Defendant Employer to be false and was made with the express purposes of discrediting Plaintiff and justifying its wrongful breach of the Agreement it had with Plaintiff.

60. On October 10, 2003 Defendant Employer illegally discharged Plaintiff in retaliation for numerous complaints and reports of questionable and/or fraudulent accounting, billing, and inventory practices perpetrated by Defendant Employer relating to the management of the United States Army account for which Plaintiff was responsible.

61. Volume Communication, Inc., Made Men Entertainment, Inc., Defendants Boucos, Tufuoh, and/or Morris exercised complete domination over the corporate actions of Defendant employer with respect to the transaction set forth herein and through their domination, abused the privilege of doing business in the corporate form to perpetrate a wrong or injustice against Plaintiff.

## CAUSES OF ACTION

### COUNT I
### WRONGFUL DISCHARGE
### (BREACH OF CONTRACT)

62. The Plaintiff repeats and re-alleges each and every allegation contained in paragraph "20" through "61" as if fully set forth herein.

63. Despite Plaintiff's repeated request that Defendant Employer honor the Agreement governing his employment relationship with Defendant Employer, Defendant Employer terminated Plaintiff without good cause on October 10, 2003.

64. Plaintiff's termination on October 10, 2003 was without cause and in violation of the terms of the governing Agreement.

65. Moreover, Plaintiff's termination occurred within his first year of employment and less than thirty days prior to the termination date of the Agreement.

66. In accordance with Section 2 of the Agreement, Plaintiff was entitled to severance compensation in the form of a lump sum payment equivalent to one year of his then current salary.

67. Since said termination, Defendant Employer has not fulfilled its contractual obligation under Section 2 of the Agreement.

68. As a direct and proximate result of Defendant Employer's breach of the Agreement, Plaintiff has suffered monetary damage in the amount of approximately $60,000.00.

## COUNT II
## DEFAMATION

69. The Plaintiff repeats and re-alleges each and every allegation contained in paragraph "20" through "68" as if fully set forth herein.

70. Defendant Employer and/or Defendants Boucos, Tufuoh and Morris in an attempt to justify their improper and illegal discharge of Plaintiff, defamed him and intentionally, negligently and/or recklessly made false statements regarding Plaintiff to employees, clients, consultants and vendors.

71. These slanderous statements were made during the period of September 2003 through January 2004 at various places and locations including but not limited to the corporate offices of Defendant Employer.

72. These statements were made maliciously and at the time of their making were known to be false by the Defendant Employer and/or Defendants Boucos, Tufuoh, and Morris.

73. Said defamatory statements were repeatedly made for the malicious and improper purpose of justifying the wrongful and retaliatory discharge of Plaintiff for his continued

11

investigation, questioning, reporting and opposition to the Defendant Employer's questionable and/or illegal accounting, billing and inventory practices with regard to the United States Army account which he managed and directed.

74. Specifically, said statements were made to Shyra Cooper, Ronnell Rock, Wayne Charles, Leonard Ross, Steven Canal, Cameron Bibb and Donna Whitaker as well as several who shall be referenced as John and Jane Does because their true identities are not known at this time.

75. The false and defamatory statements included express and implied accusations that Plaintiff violated company policies and procedures; that Plaintiff incompetently performed his duties and responsibilities; that Plaintiff was dishonest and made false reports, complaints and/or accusation of billing, accounting and inventory improprieties; and that Plaintiff had in engaged in fraudulent activities and/or other illegal acts during the course of his employment with the Defendant Employer.

76. Defendant Employer and/or Defendants Boucos, Tufuoh and Morris, acting in their officially capacity and/or in their personal capacity, expressly and impliedly made false statements that Plaintiff was dishonest, lazy, incompetent, a troublemaker, and a poor performer.

77. Said statements were repeatedly published and foreseeably republished, internally to employees and externally to clients, vendors and consultants and were understood by the recipients in their defamatory sense to be of and concerning Plaintiff.

78. As a result of the conduct of Defendant Employer and/or Defendants Boucos, Tufuoh and Morris, Plaintiff has suffered emotional distress, embarrassment, humiliation, ridicule and injury to his professional and personal reputation.

79. As a direct and proximate result of the actions of Defendant Employer and/or

Defendants Boucos, Tufuoh and Morris, Plaintiff has suffered substantial monetary damage in a sum which will exceed $3,000,000.00.

80. As a direct and proximate result of the conduct of Defendant Employer and/or Defendants Boucos, Tufuoh and Morris, Plaintiff has suffered emotional distress, embarrassment, humiliation, ridicule and injury and damage to his professional and personal reputation in a sum which will exceed $3,000,000.00.

## COUNT III
## RETALIATORY TERMINATION

81. The Plaintiff repeats and re-alleges each and every allegation contained in paragraph "20" through "80" as if fully set forth herein.

82. Plaintiff engaged in protected activity under the Federal False Claims Act, 31 U.S.C. §§ 3729, *et seq.*, by investigating what he believed to be improper or illegal accounting, billing and inventory practices of Defendant Employer regarding its United States Army Account.

83. Upon discovery of Plaintiff investigatory activities, Defendant Employer and/or Defendants Boucos, Tufuoh and Morris, acting in their officially capacity and/or in their personal capacity, engaged in a course of intimidation, hostility, and retaliation directed against Plaintiff which culminated in the illegal discharge of Plaintiff.

84. Defendant Employer's retaliatory course of conduct violated the whistleblower protection afforded Plaintiff under Federal False Claims Act, 31 U.S.C. §§ 3729, *et seq.*

85. As a direct and proximate result of the actions of Defendant Employer and/or Defendants Boucos, Tufuoh and Morris, Plaintiff has suffered monetary damages in a sum which will exceed $3,000,000.00.

86. As a direct and proximate result of the conduct of Defendant Employer and/or Defendants Boucos, Tufuoh and Morris, Plaintiff has suffered emotional distress,

13

embarrassment, humiliation, ridicule and injury and damage to his professional and personal reputation in a sum which will exceed $3,000,000.00.

## COUNT IV
## CONSTRUCTIVE DISCHARGE

87. The Plaintiff repeats and re-alleges each and every allegation contained in paragraph "20" through "86" as if fully set forth herein.

88. Plaintiff engaged in protected activity under the Federal False Claims Act, 31 U.S.C. §§ 3729, *et seq.*, by investigating what he believed to be improper or illegal accounting, billing and inventory practices of Defendant Employer regarding its United States Army Account.

89.   Upon discovery of Plaintiff investigatory activities, Defendant Employer and/or Defendants Boucos, Tufuoh and Morris, acting in their officially capacity and/or in their personal capacity, engaged in a course of intimidation, hostility, and retaliation directed against Plaintiff which culminated in the illegal discharge of Plaintiff.

90. Defendant Employer's conduct toward Plaintiff amounted to constructive discharge in violation of the whistleblower protection afford him under the Federal False Claims Act, 31 U.S.C. §§ 3729, *et seq.*

91. As a direct and proximate result of the actions of Defendant Employer and/or Defendants Boucos, Tufuoh and Morris, Plaintiff has suffered monetary damages in a sum which will exceed $3,000,000.00.

92. As a direct and proximate result of the conduct of Defendant Employer and/or Defendants Boucos, Tufuoh and Morris, Plaintiff has suffered emotional distress, embarrassment, humiliation, ridicule and injury and damage to his professional and personal reputation in a sum which will exceed $3,000,000.00.

## COUNT V
## TORTIOUS INTERFERENCE WITH
## ADVANTAGEOUS CONTRACTUAL RELATIONS

93. The Plaintiff repeats and re-alleges each and every allegation contained in paragraph "20" through "93" as if fully set forth herein.

94. Defendant Leo Burnett Worldwide, Inc., through Defendant Islam, acting in his capacity as an agent, director, and/or officer of Leo Burnett Worldwide, Inc., as Vice President and Director of U.S Army Account for Leo Burnett Worldwide, managed, administered, and oversaw all activities relating to the subcontractual relationship between Leo Burnett Worldwide, Inc. and Defendant Employer, including but not limited to accounting, billing, compliance mandates and other contractual matters.

95. At all relevant times herein, there existed a valid Agreement between Defendant Employer and Plaintiff.

96. Defendant Islam directly procured Vital Marketing Group's, LLC breach of the Agreement it had entered into with Plaintiff. Defendant Islam's procurement of Plaintiff's termination was the proximate cause of Defendant Employer breach and repudiation of the Agreement.

97. Defendant Islam had actual knowledge of the existence of a valid Agreement between Defendant Employer and Plaintiff, prior to procurement of Plaintiff's illegal discharge.

98. Defendant Islam's procurement of Plaintiff's termination was motivated by Plaintiff's refusal to consent, condone and/or participate in Defendant Employer and Defendant Islam's improper and illegal billing and accounting scheme to defraud the United States Army.

99. Defendant Islam's intentional procurement of Defendant Employer's breach of the Agreement it had with Plaintiff was without any lawfully justification.

100. At the time of his conduct, Defendant Islam acting as an agent of Leo Burnett Worldwide, Inc. or in his individual capacity, and/or Leo Burnett Worldwide, Inc. endorsed, condoned, or ratified this conduct.

101. As a direct and proximate result of Defendant Islam's tortious acts, Plaintiff has suffered substantial monetary damage in a sum not presently susceptible to precise calculation. Plaintiff has suffered monetary damages in excess of $3,000,000.00.

102. Plaintiff has also suffered emotional distress, embarrassment, humiliation, ridicule, and injury to his professional and personal reputation in the amounts in excess of $3,000,000.00.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully demands a jury trial and requests that the Court grant the following relief:

    a. Award Plaintiff damages for lost wages and benefits, together with prejudgment interest;

    b. Award Plaintiff economic damages (e.g. front and back pay) in the sum of $10,000,000.00;

    c. Award Plaintiff non-economic damages in the sum of $5,000,000.00;

    d. Award Plaintiff punitive damages;

    e. Award Plaintiff the costs, disbursements, fees associated with the commencement and prosecution of this action, including reasonable attorneys fees incurred; and

    f. Grant Plaintiff such other and further relief as this Court deems just,

    proper and necessary.

Dated: New York, NY
June 4, 2004

                    Respectfully submitted,

                    _____
                    HASLYN A. HOWARD, ESQ.  (HH 3541)
                    Attorney for Plaintiff
                    775 Riverside Drive, Suite 4G
                    New York, NY 10032
                    (516) 983-1038

## **VERIFICATION**

RANDOLPH G. HOWARD, JR., make the following statement under penalty of perjury:

I hereby declare that I have read the foregoing Verified Complaint and know the contents thereof. The allegations contained therein in the Verified Complaint are true to the best of my knowledge, except those made upon information and belief, and as to those, I believe them to be true.

I declare that the foregoing statement is true and correct under penalty of perjury under 28 U.S.C. § 1746.

        Executed this ___ of May 2004
        New York, NY


        _____
        Randolph G. Howard, Jr.
        557 West 150th Street, Apt 51
        New York, NY 10031